# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ERIC HARLEY, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) CIVIL NO. 06-953-GPM |
| HARLEY G. LAPPIN, HARRELL WATTS, MICHAEL K. NALLEY, SARA M. REVELL, S. PICKETT, DR. LEONE, P/A RATAAN, P/A GILLIAM, and P/A LOPEZ, | ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**MURPHY, District Judge:**

This prisoner civil rights case came before the Court on October 27, 2008, for a hearing on Defendants' motion to dismiss and/or for summary judgment. For the reasons set forth below, the motion is granted.

### I. BACKGROUND.

Plaintiff, Eric Harley, is a prisoner in the custody of the Bureau of Prisons ("BOP"). Harley filed this *pro se* lawsuit claiming violation of his constitutional rights pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).[1] On preliminary review (*see* Doc. 7), his claims were construed as follows:

---

[1] In his response to the motion, Harley protests that his lawsuit should not be characterized as a *Bivens* action. He states that he is suing for violation of his Eighth Amendment rights under 42 U.S.C. §1983. Because he is a federal prisoner, however, Section 1983 does not apply to him, and his suit is, in reality, brought pursuant to *Bivens*.

> In this action, Plaintiff states that he suffers from serious back pain caused by a herniated disc that requires corrective surgery. He alleges that each of the named defendants has failed or refused to provide him with the proper treatment to alleviate his condition, in violation of his rights under the Eighth Amendment.

Harley's claim arises out of medical treatment (or the lack thereof) at FCI-Greenville concerning his chronic back pain. Harley was examined by Dr. Kenneth Smith in December 2005. Dr. Smith diagnosed a protruding disc at L5-S1 and recommended surgery. The surgery was not done, however, because a second neurosurgeon opined that surgery was not clearly indicated. Instead, Harley was treated conservatively. After this lawsuit was filed, additional testing was done, and Harley's back was operated on by a third neurosurgeon.

There are nine defendants. Three (BOP Director Harley Lappin, National Inmate Appeals Administrator Harrell Watts, and North Central Regional Director Michael K. Nalley) do not physically work at Greenville. All defendants have joined in a motion to dismiss and for summary judgment (*see* Doc. 13). Defendants served the notice required by *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982) (Doc. 15), and Harley filed a response in opposition to the motion (Doc. 20).

## II. ANALYSIS.

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must accept all factual allegations in the complaint as true and draw all reasonable inferences from those facts in favor of the plaintiff. *Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007) (per curiam) (quoting *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007)); *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir. 2007). Notice pleading requires only that a plaintiff set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." FED.R.CIV.P. 8(a)(2). In order to provide fair notice of the grounds for his claim, a plaintiff

must allege sufficient facts "to raise a right to relief above the speculative level." *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (quoting *Twombly*, 127 S.Ct. at 1965 (2007)) (internal quotations omitted).

The complaint must offer "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 127 S.Ct. at 1965. A court is "not obliged to ignore any facts set forth in the complaint that undermine the plaintiff's claim." *R.J.R. Services Inc. v. Aetna Casualty and Surety Co.*, 895 F.2d 279, 281 (7th Cir. 1989). However, "when a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Twombly*, 127 S.Ct. at 1969 n. 8. *Pro se* pleadings must be liberally construed. *Antonelli v. Sheahan*, 81 F.3d 1422, 1427 (7th Cir. 1996).

On the other hand, summary judgment is appropriate under Federal Rule of Civil Procedure 56 where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The evidence is construed in the light most favorable to the non-moving party and all justifiable inferences are drawn in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Once the moving party has produced evidence to show that he or she is entitled to summary judgment, the non-moving party must affirmatively demonstrate that a genuine issue of material fact remains for trial. *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996). In responding to a summary judgment motion, the non-moving party may not simply reiterate the allegations

contained in the pleadings; more substantial evidence must be presented at this stage. Moreover, a genuine issue of material fact is not shown by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson*, 477 U.S. at 252.

The Eighth Amendment prohibits "deliberate indifference to serious medical needs." *Oliver v. Deen*, 77 F.3d 156, 159 (7th Cir. 1996) (quoting *Estelle v. Gamble*, 429 U.S. 97, 97 St. Ct. 285 (1976)). In order to prevail on his constitutional claim, Harley must satisfy the two-part test enunciated in *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) meeting both an objective and subjective component. Specifically, Harley must show (1) his condition was objectively serious, and (2) a defendant acted with deliberate indifference, which is a subjective standard. *Reed v. McBride*, 178 F. 3d 849, 852 (7th Cir. 1999).

A condition is objectively serious if "failure to treat [it] could result in further significant injury or unnecessary and wanton infliction of pain." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). Unnecessary pain and suffering, *if sufficiently serious*, may implicate the Eighth Amendment. *See Estelle*, 97 S. Ct. at 290.

Liability is personal – there is no liability unless the defendant "caused or participated" in the deprivation of a constitutional right. *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996); *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983). Thus, the two-prong *Farmer* test must be satisfied as to each defendant.

A.  **Motion to Dismiss as to Defendants Lappin, Watts, and Nalley**.

Defendants Lappin, Watts, and Nalley argue that the Court lacks personal jurisdiction over them as they do not have sufficient minimum contacts with the State of Illinois. They point out that they do not reside or maintain offices in Illinois, and Harley has not alleged that any of them performed any act or omission at any location other than their offices. The offices of Lappin and Watts are in Washington, D.C., and the office of Nalley is in Kansas City, Kansas.

Harley bears the burden of demonstrating personal jurisdiction. *See Steel Warehouse of Wisconsin, Inc. v. Leach,* 154 F.3d 712, 714 (7th Cir. 1998); *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997). Because this question is being decided without an evidentiary hearing, Harley "need only make out a prima facie case of personal jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.,* 338 F.3d 773, 782 (7th Cir. 2003) (*quoting Hyatt Int'l Corp. v. Coco,* 302 F.3d 707, 713 (7th Cir. 2002)).

Federal Rule of Civil Procedure 4(k) provides:

(1) Service of a summons or filing a waiver of service is effective to establish jurisdiction over the person of a defendant

    (A) who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located, or

    (B) who is a party joined under Rule 14 or Rule 19 and is served at a place within a judicial district of the United States and not more than 100 miles from the place from which the summons issues, or

    (C) who is subject to the federal interpleader jurisdiction under 28 U.S.C. § 1335, or

    (D) when authorized by a statute of the United States.

(2) If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state.

FED.R.CIV.P. 4(k). Thus, service and personal jurisdiction are intertwined with the power of the court, which hinges on due process. *See ISI International, Inc. v. Borden Ladner Gervais, LLP*, 256 F.3d 548 550-551 (7th Cir. 2001); *Omni Capital International v. Rudolf Wolff & Co.,* 484 U.S. 97, 104 (1987).

In *United States v. De Ortiz*, 910 F.2d 376, 381-382 (7th Cir. 1990), the Court of Appeals for the Seventh Circuit held that, in federal question cases, personal jurisdiction over a defendant requires that: (1) summoning the defendant into court accords with the due process clause of the Fifth Amendment; and (2) defendant be amenable to service of process. *See also Omni Capital International v. Rudolf Wolff & Co.*, 484 U.S. 97 (1987). The Supreme Court's last pronouncement on the subject indicates that, in the absence of a statutory provision for service, jurisdiction in federal question cases is limited by the forum state's long-arm statute. *Id.*

The Illinois long-arm statute provides that any person who commits a tortious act within Illinois submits to the jurisdiction of Illinois as to any cause of action arising from those acts. 735 ILCS 5/2-209(a)(2). In addition, the Illinois statute provides for the exercise of jurisdiction on any other basis permitted under the Illinois constitution and the constitution of the United States. 735 ILCS 5/2-209(c). The Illinois Constitution provides that "[n]o person shall be deprived of life, liberty or property without due process of law nor be denied the equal protection of the laws." Ill.Const. art. 1, § 2.

In apparent accord with the *Omni Capital* decision, and in light of the paucity of Fifth Amendment jurisprudence regarding the application of the Fifth Amendment due process clause in situations *not* involving international defendants, this district has utilized Fourteenth Amendment

jurisprudence – the standard traditionally applied in diversity cases.[2]

Under the due process clause of the Fourteenth Amendment:

> In order for personal jurisdiction to be proper, a defendant must have purposefully established minimum contacts with the forum. The generalized foreseeability of the defendant's action causing harm in the forum is not sufficient for the exercise of jurisdiction. Instead, whether the defendant's conduct and connection with the forum are such that it should reasonably anticipate being hailed into court there is the crucial inquiry. To establish such a reasonable anticipation the defendant must have purposefully availed itself of the privilege of conducting activities in the forum, invoking the benefits and protections of its laws. Once minimum contacts have been shown to exist, a court must examine other factors, such as the forum's interest in adjudicating the dispute and the burden on the defendant, to determine whether the exercise of personal jurisdiction satisfies traditional notions of fair play and substantial justice. In certain limited circumstances, these factors may show that a forum has such a strong interest in adjudicating a dispute that a lesser showing of minimum contacts than is normally the case may suffice for jurisdiction. To exercise specific personal jurisdiction, the plaintiff's cause of action must arise out of or be related to these minimum contacts that sufficiently comport with fairness and justice.

*Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp.,* 230 F.3d 934, 942 -943 (7th Cir. 2000) (internal citations omitted).

Harley's claims against Lappin, Watts, and Nalley arise out of their handling of the grievance that he filed regarding his medical treatment. The Court finds this contact to be sufficient to establish personal jurisdiction. By considering and ruling on inmate grievances in their respective offices, these defendants purposefully established minimum contacts with the forum state. This contact would reasonably cause defendants to anticipate being haled into court in Illinois. *See*

---

[2] After the *Omni Capital* decision, Rule 4 was amended in 1993 to permit a federal court to exercise personal jurisdiction over a defendant not reachable via any state long-arm statute. *See* Fed.R.Civ.P. 4(k)(2). The Advisory Committee Notes to the 1993 Amendments to Rule 4(k) reflect, however, that this new nationwide contacts provision was aimed at non-residents of the United States who could not be reached via long-arm statute. The situation at bar involves defendants who are United States residents, so it is not at all apparent that the Rule 4(k) safety valve is applicable, and this Court has not found any controlling precedent for applying Rule 4(k) and the nationwide contacts analysis to this situation.

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-475 (1985); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-415 n. 9 (1984). Therefore, there is sufficient evidence to establish general and specific jurisdiction. *See Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 780-87 (7th Cir. 2003).

But Harley's claim against these three defendants does not survive on the merits. His claim arises out of their denial of his grievance. He complains that, instead of undertaking an independent investigation, "they merely recite the information given too [sic] them by the staff members who are being complained about" (*see* Doc. 20, p. 4). This does not state a claim. Although Harley invokes "due process," he has no due process rights with respect to the prison grievance procedures. *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001). Further, "[r]uling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation." *George v. Smith*, 507 F.3d 605, 609-610 (7th Cir. 2007).

The other basis on which Harley posits liability is that these defendants are ultimately responsible for ensuring that BOP inmates receive adequate medical care by virtue of their supervisory positions. Similar to an action under 42 U.S.C. §1983, however, there is no respondeat superior liability in a *Bivens* action. *See Del Raine v. Williford*, 32 F.3d 1024, 1047 (7th Cir. 1994) and numerous cases cited therein. In addition, these defendants are lay persons, and they are entitled to rely on the medical opinions of the healthcare professionals who were treating Harley. *See Greeno v. Daley*, 414 F.3d 645, 657 (7th Cir. 2005); *Hayes v. Snyder, et al.*, No. 07-2783, 2008 WL 4511881, at *11 (7th Cir. Oct. 9, 2008) (non-medical defendants are "entitled to rely on the professional judgment of medical prison officials.")

B.  **Motion to Dismiss as to Defendant Revell**.

Sara Revell was the warden of Greenville during the relevant time. Harley's claim against her is factually similar to the claims against the three defendants discussed above. For the same reasons, Harley has failed to state a claim against Defendant Revell.

**C.      Motion for Summary Judgment as to All Defendants.**

All defendants move for summary judgment because the record establishes nothing more than a disagreement about the proper course of treatment, which does not rise to the level of an Eighth Amendment violation. Attached to defendants' memorandum (Doc. 14) are several exhibits which establish the course of medical treatment rendered to Harley for his back pain (*see also* Doc. 2, copies of some of Harley's medical records).

Included in these materials (*see* Doc. 14, Exhibit 2-B) is a summary of the course of treatment prepared by Thomas Dawdy, M.D., based on his review of the medical records. This summary and the records indicate that Harley had a lengthy history of low back pain. He underwent a lumbar laminectomy in or around 1988, before he was incarcerated. He entered FCI-Greenville in 1999. He had a CT scan of the lumbar spine in 2002, which showed no disc herniation or spinal stenosis. In August 2005, he complained of increased back pain and was given analgesics. On September 15, 2005, he was sent to an outside hospital for an MRI, but the test could not be done because Harley was too large to fit in the MRI scanner. An MRI was done at a different facility in October 2005. That test showed a protruding disc at L5-S1.

Harley was seen by Dr. Kenneth Smith of St. Louis University Medical Center on December 20, 2005. Dr. Smith opined that the MRI showed a large herniated disc at L5-S1 with severe encroachment on the nerves. He recommended surgery. Because Dr. Smith was no longer performing this type of surgery, he referred Harley to his colleague, Dr. William McCullough.

Dr. McCullough agreed that Harley had a herniated disc. In a letter dated March 23, 2006, however, Dr. McCullough stated that he did not feel there was a clear indication for surgery, and he recommended analgesics and physical therapy in the form of exercise.

Harley continued to complain of back pain. He was afforded a third neurosurgical consultation with a physician from St. Louis University on August 21, 2006. Dr. David Crafts noted that Harley's symptoms had changed since his visit with Dr. McCullough, and he recommended more testing.

MRI studies of the lumbar and cervical spine were done on November 28, 2006. Based on those studies, Dr. Crafts recommended lumbar laminectomy. Two laminectomy procedures were done during the same hospitalization in April 2007. After follow-up appointments, Harley was discharged from neurosurgical care on June 25, 2007.

Harley does not make specific allegations as to the individual defendants. Rather, he generally asserts that all defendants are liable for not seeing that his back was operated on sooner than it was. His case boils down to a claim that defendants rejected Dr. Smith's recommendation for surgery in 2005. But the record belies this complaint. Dr. Smith's recommendation was not rejected. Rather, as Dr. Smith was no longer performing this type of surgery, another doctor had to be consulted. Dr. Dawdy's affidavit establishes that Dr. McCullough recommended analgesics and exercise rather than surgery. Harley does not offer any competent evidence to refute that evidence.

The subjective prong of the *Farmer* test requires that Harley show that a defendant acted with a sufficiently culpable state of mind, "something akin to criminal recklessness." *Norfleet v. Webster*, 439 F.3d 392, 397 (7th Cir. 2006). Negligence or medical malpractice does not meet this standard. *Id*. at 396; *Estelle*, 97 S. Ct. at 292; *Wood v. Woracheck*, 618 F.2d 1225 (7th Cir. 1980).

A disagreement about the proper course of treatment or the provision of a course of treatment other than that preferred by the inmate will not create liability. *Estelle*, 97 S. Ct. at 293; *Burns v. Head Jailor*, 576 F. Supp. 618 (N.D. Ill. 1984). An inmate has no right to a particular course of treatment. *Meriweather v. Faulkner*, 821 F.2d 408, 413 (7th Cir. 1987). An inmate is not constitutionally entitled to "unqualified access to healthcare" or to the best care possible; rather, he is entitled only to "adequate medical care." *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006).

Here, the record establishes that Harley was given repeated testing, and he was afforded consultations with three different neurosurgeons. His complaints were not ignored. When the conservative treatment recommended by the second specialist did not relieve his pain, he was seen by a third specialist, and surgery was performed. The course of medical treatment given to Harley does not offend the Constitution.

### III. CONCLUSION.

For these reasons, the pending motion (Doc. 13) is **GRANTED**, and all claims are **DISMISSED on the merits**. The Clerk is **DIRECTED** to enter judgment accordingly. The parties shall bear their own costs.

**IT IS SO ORDERED.**

DATED: 11/12/08

s/ *G. Patrick Murphy*
G. Patrick Murphy
United States District Judge